UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY KREMEN,<br><br>　　　　　　　　Plaintiff,<br>　vs.<br><br>JHULIANA ARAMIS COHEN; ROSA MONTANO COHEN, GUSTAVO CORTEZ, and JACK BROWNFIELD,<br><br>　　　　　　　　Defendants. | CASE NO. 05-CV-01319 JM(POR)<br><br>**ORDER DENYING MOTION TO INTERVENE; DENYING MOTION TO CONSOLIDATE AS MOOT** |

Stephen Michael Cohen ("Cohen"), proceeding <u>in propria persona</u>, moves to intervene in this action pursuant to Fed.R.Civ.P. 24 as a defendant and to consolidate this action with an action originally filed in the Northern District of California in 1998. Plaintiff Gary Kremen ("Kremen") opposes the motion. Defendants have not filed an opposition nor a statement of non-opposition. Pursuant to Local Rule 7.1(d)(1), this matter is appropriate for decision without oral argument. For the reasons set forth below, the motion to intervene is denied and the motion to consolidate is denied as moot.

## BACKGROUND

On June 28, 2005 Kremen commenced this diversity action alleging Defendants engaged in fraudulent transfers and fraudulent conduct when they received real and personal property transferred from Cohen. Defendant Jhuliana Cohen is the daughter of Cohen and defendant Rosa Montano Cohen is the former wife of Cohen. (Second Amended Complaint ("SAC"), ¶ 3). Plaintiff alleges complete

1 diversity of citizenship as all Defendants are citizens of Mexico and he a citizen of California.

2 Plaintiff's claims relate to an April 2001 judgment entered in favor of Kremen and against
3 Cohen in the amount of $65 million in the Northern District of California, for conversion of the
4 domain name www.sex.com. Judge Ware granted Plaintiff's motion for summary judgment and for
5 preliminary injunction. Cohen was ordered to transfer the www.sex.com domain name back to
6 Kremen. Judge Ware found that Cohen had forged documents transferring the sex.com domain name
7 to himself. Among other things, the preliminary injunction also required Cohen to repatriate
8 $25,000,000 that he had sent to offshore accounts and to sign waivers for the release of tax returns,
9 bank account records, and FOIA waivers. (RJN, Ex. 1).

10 On February 12, 2001 Cohen was held in civil contempt for refusal to comply with the court's
11 orders. The court found that Cohen failed to comply with four separate court orders. On March 2,
12 2001 Cohen was again held in civil contempt for violating orders of the court and a warrant issued for
13 Cohen's arrest. Judge Ware found that Cohen willfully violated the court order by, among other
14 things, failing to return $25 million to the United States, transferring over $1.1 million in bank funds
15 to foreign accounts, and writing certified checks in the amount of $1 million. (RJN Exh. 4).

16 In March 2001 Cohen fled to Mexico. He was subsequently detained by the Mexican
17 authorities and, on October 27, 2005, Cohen was deported to the United States by the Mexican
18 authorities pursuant to the arrest warrant issued by Judge Ware. Cohen remained in custody for 14
19 months for violation of the court's contempt orders. During his incarceration, Cohen refused to
20 provide evidence of his assets and stated that he did not know how to locate his personal documents
21 and could not recollect what happed to his offshore accounts. At a represented hearing on June 19,
22 2006, Judge Ware found that Cohen's claim that he had no knowledge about certain financial
23 transactions to be a deliberate misrepresentation made "in an effort to disguise his financial
24 transactions and not to purge himself of his contempt." (RJN, Exh. 6 at pp. 21-22). Cohen was
25 released from custody on December 5, 2006 when Plaintiff Kremen was unable to provide sufficient
26 evidentiary support concerning four specific alleged improper transfers of funds. (Cohen Exh. B at
27 p.7:4-13).
28 ///

1     In the present action, Kremen alleges that Cohen transferred real and personal property to
2  Defendants in an attempt to avoid paying on the $65 million judgment. Kremen alleges that
3  Defendants made purchases on credit cards that were paid by Cohen and that Cohen transferred funds
4  from offshore banks to Mexico where he used the funds to purchase interests in various businesses
5  which were held in Defendants' names. (SAC ¶17). Plaintiff alleges that the funds were transferred
6  with the intent to prevent him from collecting his judgment and learning about the existence of the
7  funds.

8     On November 1, 2005 this court denied defendant Juliana and Rosa Cohen's motion to
9  dismiss. Thereafter, default was entered by the Clerk of Court against these defendants on January
10 12, 2006. Plaintiff has not moved for entry of default judgment against these defendants.

11    Cohen now moves to intervene in this action pursuant to Fed.R.Civ.P. 24 and to consolidate
12 this action with the action pending before Judge Ware in the Northern District of California. Plaintiff
13 opposes both motions.

14                                    DISCUSSION

15    Cohen moves to intervene in this action both as a matter of right pursuant to Rule 24(a) and
16 for permissive joinder pursuant to Rule 24(b). Whether intervention is sought as a "matter of right"
17 or as "permissive," such relief may only be granted "upon timely application." Fed.R.Civ.P. 24(a),
18 (b); Empire Blue Cross & Blue Shield v. Janet Greeson's A Place for Us, Inc., 62 F.3d 1217 (9th Cir.
19 1995). Timeliness is a threshold determination directed to the court's sound discretion. NAACP v.
20 New York, 413 U.S. 345, 366 (1973).

21    Timeliness

22    In determining timeliness, the court considers the following three factors: (1) the stage of the
23 proceedings at the time the applicant seeks to intervene; (2) prejudice to the existing parties from the
24 applicant's delay in moving to intervene; and (3) any reason for and the length of delay in seeking to
25 intervene. United States v. State of Washington, 86 F.3d 1499, 1502 (9th Cir. 1996).

26    Here, substantial activity has occurred in this case since the filing of the original complaint
27 almost two years ago on June 28, 2005. Plaintiff has filed a second amended complaint, the court
28 ruled on a motion to dismiss filed by Rosa and Jhuliana Cohen, defendant Jack Brownfield has been

1 dismissed as a party, discovery is on-going, discovery motions have been ruled upon, and default has
2 been entered as to defendants Rosa and Jhuliana Cohen. Plaintiff would also be prejudiced by
3 continued delay, the need for additional discovery, the filing of additional motions, the need to modify
4 litigation strategies, and the need to reopen matters previously adjudicated..[1] These factors weigh
5 against a finding of timeliness.

6 With respect to the reasons for and the length of delay, Cohen represents that he "just learned
7 about this action and immediately filed his motions." (Motion at p.9:21-22). The court concludes
8 otherwise. Plaintiff has come forward with three of Cohen's e-mails dated September 26, 2005,
9 September 28, 2005, and October 9, 2005 wherein Cohen discussed the complaint and motions in the
10 present action. (Dillon Decl. ¶21; Exhs. 1-3). The first e-mail, sent to Chris Jester, attached a copy
11 of the motion to dismiss filed by Rosa and Jhuliana Cohen. The second e-mail, sent to former
12 defendant Brownfield, attached a copy of Plaintiff's First Amended Complaint. The third e-mail, sent
13 to former defendant Brownfield, attached and transmitted an <u>ex parte</u> motion for an extension of time.
14 Apparently, Cohen drafted, or at least reviewed, the <u>ex parte</u> motion prior to its filing on October 14,
15 2005. (Docket No. 28). As Cohen has been aware of and participated in this action behind the scenes
16 since at least September 2005, Cohen's statement that he just learned about the present action and filed
17 his motion "immediately" upon learning of the existence of this action is, on the present record,
18 materially false and misleading.[2] The excessive delay in moving to intervene and the resulting
19 prejudice to Plaintiff, standing alone, call for a denial of Cohen's application to intervene. Where,
20 however, the excessive delay and prejudice considerations are combined with Cohen's material
21 misrepresentation to the court on the timing issue, the case against Cohen's application to intervene

---

[1] The court notes that Cohen represents, without providing the court with any evidentiary support for his statements, that Plaintiff has entered into a full settlement with Rosa and Jhuliana Cohen in an action pending in Tijuana, Mexico and in the Superior Court for the County of San Francisco. (Response at p.4:4-11).

[2] Cohen does not rebut Plaintiff's evidentiary showing that he has been actively aware of or involved in this case since at least September 2005. However, Cohen objects to the Dillon declaration on the ground that the statements were made without personal knowledge. (Objection to Declaration of Timothy Dillon at p.3). The court rejects Cohen's objection. Dillion declares that he has personal knowledge of the e-mails and explains that Kremen, in the Northern District action, authorized Dillon to access Kremen's e-mail account at scohen15@gmail.com. As Dillon declares that he personally reviewed those e-mails and submitted true and correct copies to the court, Kremen's evidentiary objection based on lack of personal knowledge is denied.

is insurmountable. As Cohen fails to satisfy the threshold issue of timeliness, the court does not reach the merits of Rule 24(a) or (b) intervention.

In sum, the motion to intervene is denied. The motion to consolidate is also denied as moot.

**IT IS SO ORDERED.**

DATED: June 28, 2007

_____
Hon. Jeffrey T. Miller
United States District Judge

cc: All Parties