# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY KREMEN,<br><br>　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>JHULIANA ARAMIS COHEN, an individual; ROSA MONTANO COHEN, an individual; GUSTAVO CORTEZ, an individual; MARCO MORAN, an individual; ROMAN CASO, an individual; ALBERTO TRUJILLO, an individual; JUAN JOSE PEPE MARTINEZ INIGUEZ, an individual; ROBERTO CURIEL ORTEGA, an individual; and MARIA DEL SOCORRO AMAYA GARCIA DE CURIEL, an individual,<br><br>　　　　　　　　　　　Defendants. | CASE NO. 05CV1319-MMA (POR)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>[Doc. No. 174] |

　　　　Pending before the Court is Plaintiff Gary Kremen's motion for entry of default judgment against Defendants Jhuliana Cohen, Rosa Cohen, and Gustavo Cortez. (Doc. No. 174.) On October 19, 2009, the Court held a hearing on Plaintiff's motion. (Doc. No. 175.) Attorney Timothy Dillon appeared on Plaintiff's behalf. Prior to the hearing, the Court provided Plaintiff with its tentative thoughts on the motion. During the hearing, Plaintiff requested leave to file a supplemental brief addressing the particular issues highlighted by the Court. The Court granted Plaintiff leave to file a supplemental brief on or before Friday, October 30, 2009. On October 30, 2009, Plaintiff submitted

1  his supplemental brief in support of his motion for default judgment. On November 3, 2009, the Court
2  found the matter suitable for submission pursuant to Civil Local Rule 7.1(d)(1), and vacated the
3  follow-up hearing that the Court set for November 9, 2009.

### BACKGROUND

5  Plaintiff Gary Kremen is an internet entrepreneur who obtained a $65 million judgment in the
6  Northern District of California against Stephen Cohen and alter ego entities for fraudulently
7  converting the Internet domain name, www.sex.com. Plaintiff seeks relief in this action against
8  various Defendants who Plaintiff alleges assisted Stephen Cohen in fraudulently concealing and
9  transferring his assets to avoid the Northern District judgment. Two of these Defendants are Jhuliana
10 Aramis Cohen, Stephen Cohen's step-daughter, and Rosa Montano Cohen, Stephen Cohen's ex-wife.
11 The third Defendant is Gustavo Cortez, who was at one time served as Stephen Cohen's attorney.

12  *1.    Defendant Cortez*

13  Magistrate Judge Louisa S. Porter granted Plaintiff's request for service by publication on
14 Cortez. (Doc. No. 71.) Pursuant to Judge Porter's order, Plaintiff completed service by publication via
15 publication in the San Diego Transcript, a newspaper of general circulation. The Transcript published
16 the notice of service on May 16, 2007, May 23, 2007, May 30, 2007, and June 6, 2007. (Doc. No. 87.)
17 On August 2, 2007, the Clerk entered default against Cortez. (Doc. No. 94.)

18  *2.    Defendants Jhuliana Cohen and Rosa Cohen*

19  On August 3, 2005, Jhuliana and Rosa Cohen filed a motion to dismiss, which the Honorable
20 Jeffrey T. Miller denied on November 1, 2005. (Doc. No. 33.) In conjunction with denying the motion
21 to dismiss, Judge Miller instructed the Cohen Defendants to file an answer to Plaintiff's First
22 Amended Complaint within 30 days of the issuance of the Order. (*Id.* at 7:3–4.) Defendants failed to
23 file answers to the First Amended Complaint, and on January 12, 2006, the Clerk entered default
24 against both Jhuliana and Rosa Cohen. (Doc. No. 40.) Over the next 18 months, the Cohen Defendants
25 failed to take any action in this litigation. On June 5, 2007, Jhuliana and Rosa Cohen each attempted
26 to file answers to the SAC, which had since become the operative pleading in this action. (Doc. Nos.
27 83, 84.) Because Defendants were in default and had not moved to set aside the default prior to filing
28 their answers, Judge Miller struck the answers pursuant to Federal Rule of Civil Procedure 12(f).

1  (Doc. No. 96.) Judge Miller specifically explained that because default had been entered against
2  Defendants, they were no longer permitted to litigate the underlying merits of the claim. (*Id.*) Seven
3  months later, on May 27, 2008, Jhuliana Cohen filed a Motion to Dismiss. (Doc. No. 111.) On October
4  16, 2008, the Honorable Janis L. Sammartino denied the motion, again noting that Defendant could
5  not litigate the case because she was in default. (Doc. No. 136.) On November 6, 2008, both Jhuliana
6  and Rosa Cohen moved to dismiss the SAC, but this time included a motion to set aside the default.
7  (Doc. No. 136.) On May 13, 2009, the Court denied Defendants' request to set aside the default, as
8  well as their motion to dismiss. (Doc. No. 168.)

9  On September 8, 2009, the Court held an order to show cause hearing for failure to move for
10 default judgment pursuant to Civil Local Rule 55.1. (Doc. No. 172.) Thereafter, Plaintiff filed the
11 instant motion for default judgment. (Doc. No. 174.)

## LEGAL STANDARD

13 Pursuant to Federal Rule of Civil Procedure 55(b)(2), a party may move the court for an entry
14 of default judgment. Fed. R. Civ. P. 55(b)(2). The granting of a default judgment is within the
15 discretion of the court. *Draper v. Coombs,* 792 F.2d 915, 924 (9th Cir. 1986). The Court's inquiry is
16 essentially two-pronged. First, the Court must determine whether default judgment is appropriate.
17 Second, the Court must determine whether the Plaintiff's requested relief should be awarded. As to
18 the merits of the motion, the Court should consider the following factors: (1) the merits of plaintiff's
19 substantive claim; (2) the sufficiency of the complaint; (3) the sum of money at stake in the action;
20 (4) the possibility of prejudice to the plaintiff; (5) the possibility of a dispute concerning material
21 facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the
22 Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool,* 782 F.2d 1470,
23 1471-72 (9th Cir. 1986).

## DISCUSSION

25 **A.   Whether Default Judgment is Appropriate**

26    *1.    Plaintiff's substantive claim and sufficiency of the complaint*

27 The first two *Eitel* factors are (1) the merits of the plaintiff's substantive claim, and (2) the
28 sufficiency of the complaint. *Eitel*, 782 F.2d at 1471–72. These two factors require that a plaintiff

"state a claim on which the [plaintiff] may recover." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). On a motion for default judgment, the factual allegations in the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987) (citing *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977)).[1] In the complaint, Plaintiff alleges causes of action for fraudulent transfer under Cal. Civ. Code §§ 3439.05, 3439.07, and 3440, and fraud.

### a. *Cal. Civ. Code § 3439.05*

Section 3439.05 of the California Civil Code voids a transfer as to a creditor if the debtor made the transfer "without receiving a reasonably equivalent value in exchange for the transfer or obligation" and the "debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Cal. Civ. Code § 3439.05. As an initial matter, Plaintiff fails to allege facts in the complaint that the debtor, Stephen Cohen, was insolvent at the time he made the alleged transfers or that he became insolvent as a result of the transfers. However, California Civil Code § 3439.02 provides that a "debtor who is generally not paying his or her debts as they become due is presumed to be insolvent." Cal. Civ. Code § 3439.02(c).

Plaintiff urges the Court that his allegations that Stephen Cohen failed to pay the $65 million judgment obtained by Plaintiff in the Northern District compels the presumption that Stephen Cohen is insolvent. Plaintiff also provides evidence that Stephen Cohen has readily admitted to being insolvent. Specifically, Stephen Cohen stated during his September 29, 2006 deposition that he owned no assets other than the "clothes [he] was arrested in," and that any assets and personal belongings he previously owned had been taken, and that upon release from prison, he would own nothing and have nowhere to go. (*Mot. for Default J.* at Ex. 84.) Moreover, Stephen Cohen previously stated in a declaration he submitted to the Northern District that his liabilities greatly exceeded his assets, he

---

[1] The Court notes that while the Clerk entered default against Defendants Jhuliana and Rosa Cohen in connection with the now-inoperative FAC, all material terms in the SAC are identical to those in the FAC as far as the Cohens are concerned. Thus, Plaintiff was not required to serve the SAC on those Defendants. *See* Fed. R. Civ. P. 5(a) ("No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4). The Court also notes that Defendant Cortez was defaulted in connection with the SAC. Based on the foregoing and for purposes of simplicity, the Court analyzes the pleadings found in the SAC in addressing whether default judgment is appropriate.

owned no assets, and "no one has any assets that they are holding for me in any capacity." (*Supp. Br.* at Ex. 85.) Plaintiff then went on to acknowledge that his liabilities, including the $65 million judgment, exceeded $80 million. (*Id.*)[2] Based on the foregoing, it appears that Plaintiff has adequately demonstrated that Stephen Cohen was insolvent when he made the transfers alleged by Plaintiff in the Complaint. Thus, Plaintiff has stated a claim under Section 3439.05.

### b. *Cal. Civ. Code § 3439.07*

Plaintiff's next basis for relief arises under section 3439.07 of the California Civil Code. This provision, however, appears to outline the various remedies available to a creditor who successfully establishes a fraudulent transfer under the Uniform Fraudulent Transfer Act provisions in the California Civil Code. Cal. Civ. Code § 3439.07. Because this does not confer a right of action, the Court finds that this statutory provision is only relevant to the Court's second inquiry, that is, whether the Court should award the requested relief.

### c. *Common law fraud*

Rule 9(b) imposes a heightened pleading standard when it comes to fraud. Specifically, the rule states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." As the Ninth Circuit has explained, "Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also 'to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)). The elements of a fraud claim under California law are: (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e. to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Agricultural Ins. Co. v. Superior Court*, 70 Cal. App. 4th 385, 402 (1999). As the Ninth Circuit has held, "While mere conclusory allegations of fraud are insufficient, statements

---

[2] To the extent the Court cites to documents filed in connection with the Northern District litigation, the Court has determined that it may properly take judicial notice of those documents pursuant to Federal Rule of Evidence 201.

of the time, place and nature of the alleged fraudulent activities are sufficient." *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987) (citing *Semegen v. Weidner*, 780 F.2d 727, 734–35 (9th Cir. 1985)).

Here, Plaintiff adequately alleges that Defendants committed fraud by actively concealing the fact that Stephen Cohen transferred funds outside the jurisdiction of the United States with the intent to prevent Plaintiff from collecting his judgment and preventing Plaintiff from learning of the existence of these funds. Although the complaint does not allege specific dates for the transfers, Plaintiff alleges that the transfers occurred after April 2001, and continued until at least June 2005, and were done for the purpose of avoiding the judgment. Thus, the Court finds that Plaintiff has sufficiently stated a claim for fraud.

### d. Cal. Civ. Code § 3439.04

Plaintiff spends a majority of the default judgment motion arguing that Stephen Cohen and Defendants violated § 3439.04. The complaint, however, contains no reference to this statute and fails to ask for relief under this statute. Rule 54(c) specifically states: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Plaintiff contends that the Court should focus solely on the factual allegations, which he contends state a claim for relief under § 3439.04. Plaintiff cites various cases from the Ninth Circuit and other circuits suggesting that the Court is not bound to the actual requests for relief in the Complaint. Plaintiff's reliance on these cases, however, is misplaced. Each case cited by Plaintiff deals with judgments on the merits, and appears to construe the meaning of the second clause of Rule 54(c), which provides that, except in cases of default judgment, "every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). Plaintiff has failed to cite a single case, nor has the Court found one, where a court granted a default judgment under a statute for which Plaintiff did not initially seek relief. Because Rule 54(c) precludes the Court from awarding damages for actions not pled in the complaint, Plaintiff is not entitled to any damages claimed under this statutory provision.

### e. Cal. Civ. Code § 3440

Section 3440 of the California Civil Code provides that a transfer of personal property is void

against the transferor's creditors if not accompanied by an immediate delivery followed by an actual and continued change of possession of the property. Plaintiff alleges that Stephen Cohen transferred property in the form of money, real property, partnership interests, and business interests to Defendants without immediate delivery of the property. Plaintiff also alleges that the transfers were not followed by an actual and continued change of possession of the property. By its terms, however, Section 3440 applies only to personal property, and does not apply to real property. Thus, to the extent that Plaintiff seeks to recover under this provision for transfers of real property, Plaintiff is not entitled to such relief. However, to the extent Plaintiff references transfers of money, partnership interests, and other business interests, Plaintiff has adequately stated a claim under Section 3440.

### 2. *The sum of money at stake in the action*

After analysis of the pleadings, the Court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct. *Pepsico, Inc.*, *supra*, 238 F. Supp. 2d at 1176. Here, the amount of money at stake is fairly high (in the millions), however, Plaintiff's action is premised on recovering assets transferred to avoid a $65 million judgment he obtained in the Northern District. The amount requested here is relatively low compared to the amount of the Northern District judgment. Accordingly, this factor weighs in favor of granting the motion for default judgment.

### 3. *The possibility of prejudice to the plaintiff*

The "possibility of prejudice to the plaintiff" factor focuses on whether the plaintiff will suffer prejudice if default judgment is not entered. *Pepsico, supra*, 238 F. Supp. 2d at 1177. Here, Plaintiff will be greatly prejudiced if default judgment is not entered. Plaintiff will likely be without other recourse for recovery because Stephen Cohen and the other Defendants reside in Mexico. In addition, the Court notes that this case was filed in 2005, and Plaintiff has expended significant resources over the past four years to recover the assets that Mr. Cohen fraudulently transferred to the defaulted Defendants. Precluding Plaintiff from obtaining a judgment against Defendants in light of the factual background and procedural history of this case would constitute a significant prejudice to the plaintiff. Thus, this factor weighs in favor of granting the motion for default judgment.

### 4. *The possibility of a dispute concerning material facts*

Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those

1  relating to damages. *TeleVideo System, Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).
2  Because the well-pleaded facts are taken as true and Plaintiff has presented ample evidence supporting
3  those allegations, there is no genuine dispute of material facts that would preclude granting Plaintiff's
4  motion.

*5.     Whether the default was due to excusable neglect*

6  The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect.
7  The Court notes that Defendants Jhuliana and Rosa Cohen appeared in this action via a motion to
8  dismiss. When Judge Miller denied their motion, they failed to follow Judge Miller's Order to file
9  their respective answers within thirty days. After default was entered, Jhuliana and Rosa Cohen failed
10 to take any action on their own behalf for more than eighteen months. Finally, Jhuliana and Rosa
11 Cohen sought to set aside the default, but failed to show good cause for their prolonged inaction. (Doc.
12 No. 178.) The Court specifically determined that the default was not the result of excusable neglect.
13 Finally, although Cortez has never appeared in this action, he was defaulted several years ago and has
14 still not attempted to have the default set aside. Accordingly, this factor weighs in favor of granting
15 Plaintiff's motion.

*6.     The strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits*

18 "Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 728 F.2d
19 at 1472. However, the mere existence of Fed. R. Civ. P. 55(b) indicates that "this preference, standing
20 alone, is not dispositive." *Pepsico*, *supra*, 238 F. Supp. 2d at 1177. Here, the Court already considered
21 the strong policy favoring decisions on the merits when it denied Defendants' request to set aside the
22 default. (Doc. No. 178.) Thus, this factor is not dispositive of the inquiry.

23 Based on the foregoing, the Court finds that the various *Eitel* factors weigh in favor of granting
24 Plaintiff's motion for default judgment.

25 **B.     Relief Sought**

26 Because the Court has determined that the *Eitel* factors weigh in favor of granting Plaintiff's
27 motion for default judgment, the Court must next determine whether an award of Plaintiff's requested
28 damages is appropriate. As the Court has already noted, a "judgment by default may not be different

1 in kind from or exceed in amount that prayed for in the demand for judgment." Fed. R. Civ. P. 54(c).
2 As the *Pepsico* court noted, this provision has been interpreted to refer to the prayer for relief in the
3 complaint. *Pepsico*, 238 F. Supp. 2d at 1175. Under Cal. Civil Code § 3439.08(b), a creditor may
4 recover judgment for the value of the asset transferred or the amount necessary to satisfy the creditor's
5 claim, whichever is less. The judgment may be entered against: (1) the first transferee of the asset or
6 the person for whose benefit the transfer was made, or (2) any subsequent transferee other than a good
7 faith transferee who took for value or from any subsequent transferee. Cal. Civ. Code § 3439.08(b).
8 In addition, if the judgment under § 3439.08(b) is based upon the value of the asset transferred, the
9 judgment shall be for an amount equal to the value of the asset at the time of the transfer, subject to
10 adjustment as the equities may require. Cal. Civ. Code § 3439.08(c).

     *a.*    *Jhuliana Aramis Cohen*

         *1.*    *Bank Accounts*

13 As to the various "transfers" alleged to involve bank accounts and credit cards, there is
14 evidentiary support to award damages against Jhuliana Cohen related to the following bank accounts:
15 Wells Fargo Account Number 747-663-1119, Pacnet Wells Fargo Account 201-175-6863, HSBC Bital
16 Bank Account, and EZCallme, Inc. Union Bank Accounts 606-002-0149 and 606-002-0157. The
17 evidence shows that although these accounts were in Jhuliana Cohen's name (or in the case of the
18 EZCallme and Pacnet Accounts, in the name of the corporation for which Jhuliana Cohen was the
19 designated signatory), Stephen Cohen transferred funds into these bank accounts and then used those
20 funds to pay off his credit cards and other personal debts. Stephen Cohen unequivocally exercised
21 dominion and control over those accounts, and Jhuliana Cohen admittedly had little or no access to
22 the funds, nor control over Stephen Cohen's use of the funds. Accordingly, the Court finds default
23 judgment appropriate as to the following accounts and amounts because they represent fraudulent
24 transfers under Cal. Civil Code §§ 3440 and 3439.05:
25 ///
26 ///
27 ///
28 ///

| Asset transferred/value | Amount |
|---|---|
| Wells Fargo Bank Account 747-663-1119 | $288,052.26 |
| Wells Fargo Bank Account 201-175-6863 (Pacnet) | $1,067,374.21 |
| Union Bank Accounts 606-002-0149 and 606-002-0157 (EZCallme) | $225.00 |
| HSBC Bital Account 7001954635 | $407,867.61 |

*2.     Loan Proceeds*

Plaintiff alleges that Stephen Cohen fraudulently transferred money by ensuring that Jhuliana Cohen received repayments of loans made by Stephen Cohen. Specifically, Plaintiff demonstrates that pursuant to a convoluted scheme to fraudulently transfer assets, Stephen Cohen gave Roman Caso $1.3 million, which Caso then loaned to Roberto Curiel Ortega. Simply put, Stephen Cohen then directed Caso to transfer his rights to collection of the proceeds to Jhuliana Cohen without consideration. Once Jhuliana Cohen became the beneficiary, Curiel paid her $593,000 in cash and conveyed a school property worth $819,000 to Administracion y Asistencia Imobiliaria, S.A. de C.V. ("AAI"), a corporation in which Jhuliana Cohen had a 98 percent ownership interest.[3] Because Stephen Cohen was insolvent at the time the transfer was made, and the transfer of the right to receive payments under the loan promissory note was made without consideration, the Court finds that Plaintiff is entitled to judgment in the amount of **$1,395,620.00**[4] under Cal. Civil Code § 3439.05.

*3.     Business Interests*

Stephen Cohen purchased a 40% interest in Turistica Regis, a Mexican Corporation that has or had sole ownership over a Gentlemen's club named the Bolero for $800,000. The ownership interest was put in Jhuliana Cohen's name, however, the evidence shows that Jhuliana Cohen was an owner only in name and that Stephen Cohen was the true owner and received all distributions of proceeds from the ownership interest. Thus, under Cal. Civ. Code § 3440 and § 3439.05, Plaintiff is entitled to $800,000 (the purchase price) and $390,696.12 (distributions on investment) for a total

---

[3]The Court is aware that Jhuliana Cohen subsequently transferred 96 percent of her interest in AAI to Defendant Cortez. Under Cal. Civ. Code § 3439.08(b), however, the Court may enter judgment against her as a transferee of the asset.

[4]This amount is calculated as $593,000 + $802,620 (98 percent of $819,000) = $1,395,620.

amount of **$1,190.696.12**.

### 4.     *Real Property*

Plaintiff seeks damages for fraudulent transfers of the Zona Rio Property and the Costa de Oro Property. Stephen and Rosa Cohen purchased the real property known as Lot 15 of block 67, in the Tijuana District known as Zona Rio ("Zona Rio Property") in October 2001. On May 28, 2003, Stephen and Rosa Cohen transferred the Zona Rio Property to Sarai Cohen and Defendant Jhuliana Cohen without consideration. At the time of the transfer, the Zona Rio Property was valued at $453,504.85. Because this transfer was made when Mr. Cohen was admittedly insolvent and he did not receive a reasonably equivalent value in exchange for the transfer, it is a fraudulent transfer under § 3439.05. Accordingly, Plaintiff is entitled to **$226,752.43**[5], the value of the property at the time of transfer, for the fraudulent transfer of the Zona Rio Property.

Stephen and Rosa Cohen purchased the real property known as Lot 6 of block 215, with an area of 1,262 square meters, in the section known as Costa de Oro, in Tijuana, Baja California, Mexico ("Costa de Oro Property"). On May 28, 2003, Stephen and Rosa Cohen transferred the Costa de Oro Property to Jhuliana Cohen without consideration. At the time of the transfer, the Costa de Oro Property was valued at $355,193.50. Because this transfer was made when Mr. Cohen was admittedly insolvent and he did not receive a reasonably equivalent value in exchange for the transfer, it is a fraudulent transfer under § 3439.05. Accordingly, Plaintiff is entitled to **$355,193.50**, the value of the property at the time of the transfer, for the fraudulent transfer of the Costa de Oro Property.

### 5.     *Stocks*

Plaintiff asserts that he is entitled to Jhuliana Cohen's stocks in WLCom, a Mexican corporation. Plaintiff has failed to show that Stephen Cohen originally owned these stocks, or that he subsequently transferred them to Jhuliana Cohen. Accordingly, Plaintiff is not entitled to the value of these stocks.

///

///

---

[5]This amount represents half of the valued property because it appears that Jhuliana Cohen only received a 50 percent interest in the property.

  *b.*  *Rosa Cohen*

    *1.*  *Bank Accounts*

Plaintiff asserts that Rosa Cohen and Stephen Cohen opened Wells Fargo Bank Account 078-436-4614 and, between January 2000 and June 2005, transferred a total of $1,094,579.45 to pay for Stephen Cohen's personal expenses. Plaintiff offers evidence that Rosa Cohen was not employed when these transactions were made, and it appears that all of the payments out of this account were directed toward Stephen Cohen's personal credit cards. In addition, the Court notes that the Northern District determined that Stephen Cohen is the "beneficial owner" of this particular bank account. Finally, the Court has already noted that Stephen Cohen is admittedly insolvent. Thus, based on the established facts, the Court finds that Plaintiff is entitled to **$1,094,579.45** under Cal. Civ. Code §§ 3439.05 and 3440.

    *2.*  *Business Interests*

Plaintiff asserts that Rosa Cohen fraudulently transferred her interest in Turistica Regis S.A. de C.V. ("the Bolero Nightclub") to Jhuliana Cohen. Plaintiff is not entitled to damages related to the Bolero Nightclub, however, because Rosa Cohen is not the debtor here. *See* Cal. Civ. Code § 3439.01(e) (defining debtor as a "person who is liable on a claim"). Thus, Plaintiff cannot recover for Rosa Cohen's transfer of an asset in her name.

    *3.*  *Real Property*

Plaintiff also asserts that Rosa Cohen fraudulently transferred her interest in the School Property, the Costa de Oro Property, and the Zona Rio Property. Plaintiff essentially asserts that he is entitled to judgment for these transfers because Rosa Cohen was Stephen Cohen's co-conspirator. As already noted, however, Rosa Cohen is not the debtor here, and Plaintiff has not provided any authority that the Court can award damages against Rosa Cohen by virtue of a conspiracy. Accordingly, the Court cannot award damages for these transfers because they were not fraudulent under the various statutory provisions cited by Plaintiff.

///

///

///

*c.    Gustavo Cortez*

*1.    Cash Transactions*

Plaintiff seeks to recover for an alleged transaction where Gustavo Cortez gave Jhuliana Cohen $7,929.50. Like Rosa Cohen, however, Gustavo Cortez is not the debtor here. Moreover, after reviewing the evidence offered, there is no evidence that this money came from Stephen Cohen. Nor is there any evidence that Stephen Cohen used these funds after they were given to Jhuliana Cohen. Thus, Plaintiff cannot recover for this transfer.

*2.    Real Property*

Plaintiff seeks to recover damages for Cortez "fraudulently encumbering the properties (Costa de Oro and Zona Rio)" owned by Jhuliana Cohen. This claim for damages has no basis in the complaint and cannot properly be redressed by any of the statutes cited by Plaintiff.

Plaintiff also seeks to recover for Cortez's subsequent acquisition of 98 percent of the shares of AAI, which owns the entirety of the School Property. The evidence demonstrates that Jhuliana Cohen transferred a 50 percent interest in AAI to Cortez and then later transferred her remaining 48 percent interest for no legitimate consideration. Because Cortez is considered a "subsequent transferee" under § 3439.08, Plaintiff is entitled to judgment in the amount of **$802,620.00**[6] under Cal. Civ. Code § 3439.05.

*3.    Business Interests*

Plaintiff also seeks damages for Cortez's "fraudulent actions" in assisting Stephen Cohen's fraudulent transfer of his interest in the Bolero Nightclub. There is no basis in the Complaint for Plaintiff to seek such relief. Accordingly, he is not entitled to damages associated with the Bolero Nightclub.

*d.    Punitive Damages*

Under California law, punitive damages are appropriate where "the defendant's acts are reprehensible, fraudulent or in blatant violation of law or policy." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1287 (1994); Cal. Civ. Code § 3294(a). In order to recover punitive damages, plaintiff must establish by clear and convincing evidence that the defendant is guilty of (1) fraud, (2)

---

[6]This figure is based on Cortez's subsequent acquisition of a 98 percent interest in AAI.

oppression, or (3) malice. Cal. Civ. Code § 3294(a). Specifically, a plaintiff must show that the defendant acted with intent or engaged in "despicable conduct." As one California Court of Appeal described it, "the adjective 'despicable' connotes conduct that is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." *Lackner v. North*, 135 Cal. App. 4th 1188, 1210 (2006). The Court notes that Plaintiff alleges fraudulent and willful intent. However, while the Court must generally accept the factual allegations of the Complaint as true, allegations relating to the amount of damages must be supported by some evidence. *TeleVideo, supra*, 826 F.2d at 918 (citing *Geddes, supra*, 559 F.2d at 560). Here, Plaintiff's offered evidence does not support an award of punitive damages. Plaintiff has failed to establish to the Court's satisfaction that Defendants engaged in a willful or intentional effort to conceal Stephen Cohen's assets for the purpose of depriving Plaintiff of his legal rights. Plaintiff has not offered any direct evidence of the defaulted Defendants' willfulness or intent to conceal.

In addition, California law requires that an award of punitive damages must be supported by meaningful evidence of the defendant's financial condition. *Adams v. Murakami*, 54 Cal. 3d 105, 115 (1991); *see also Robert L. Cloud & Assocs. v. Mikesell*, 69 Cal. App. 4th 1141, 1151 (1999). As the California Supreme Court explained in *Adams*, the Court cannot determine what amount of damage is necessary to punish and deter, absent evidence of the defendant's financial condition. *Adams*, *supra*, 54 Cal. 3d at 112. Moreover, the Court explained that without such evidence, it would be virtually impossible for a reviewing court to determine whether the award is appropriate or excessive. *Id.* Here, Plaintiff has failed to provide any evidence as to the respective financial condition of the defaulted defendants. Without such evidence, the Court cannot determine what amount of punitive damages would be appropriate in this case. Accordingly, without any direct evidence of fraudulent intent or the defaulted Defendants' respective financial conditions, the Court cannot award punitive damages.

    *e.    Injunctive Relief*

Plaintiff seeks injunctive relief pursuant to Cal. Civ. Code § 3439.07(a)(3)(A), which provides that a creditor who establishes a fraudulent transfer may obtain "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or its proceeds." Cal. Civ. Code § 3439.07(a)(3)(A). Because Plaintiff has adequately established fraudulent transfers as outlined

1 *supra*, the Court grants Plaintiff's request and hereby **ENJOINS** the defaulted Defendants from
2 transferring any of the assets or proceeds from those assets for which the Court has entered default
3 judgment.

### CONCLUSION

5 In light of the foregoing, the Court hereby **GRANTS** Plaintiff's motion for default judgment.
6 Judgment shall be entered against Defendant Jhuliana Aramis Cohen in the total amount of
7 **$4,931,781.13** in accordance with the terms above. Judgment shall be entered against Defendant Rosa
8 Montano Cohen in the total amount of **$1,094,579.45** in accordance with the terms above. Finally,
9 judgment shall be entered against Defendant Gustavo Cortez in the total amount of **$802,620.00** in
10 accordance with the terms above.

11 **IT IS SO ORDERED**.

12 DATED: November 6, 2009

Hon. Michael M. Anello
United States District Judge